*CHAMBERS.*

*Ex parte Rhodes.*

---

*Opinion of Chief Justice Marshall, relative to the collection of Militia fines.*

| William Meade | |
|---|---|
| v. | MOTION TO BE DISCHARGED UNDER A WRIT OF HABEAS CORPUS. |
| The Deputy Marshal of the district of Virginia. | |

By the return of the deputy marshal, it appears that William Meade, the petitioner, was taken into custody by him, and is detained in custody on account of the non-payment of a fine of forty-eight dollars, assessed upon him by the sentence of a court martial for failing to take the field in pursuance of general orders of the 24th of March, 1813, the marshal not having found property whereof the said fine might have been made.

The court-martial was convened by the following order:

*November 8th, 1813.*

BRIGADE ORDER.—A general court-martial to consist of Lieutenant Colonel Mason, president, &c. will convene at the court-house in Leesburg, on Friday the 3d day of next month, for the trial of delinquencies which occurred under the requisition of the governor of Virginia and secretary of war, for militia from the county of Loudon.

(Signed) HUGH DOUGLASS.
*Brig. gen. 6th Brig. of Va. M.*

The court being convened, the following proceedings were had. It appearing, to the satisfaction of the court, that the following persons of the county of Loudon were

*Construction of the 5th sec. of the act of congress 1795, in relation to courtmartials.*

VOL. II. 72

Wm. Meade
v.
The Deputy
Marshal of the
district of Vir-
ginia.

regularly detailed for militia duty, and were required to take the field under general orders of March 24th, 1813, but refused or failed to comply therewith, whereupon this court doth order and adjudge, that they be each severally fined the sum annexed to their names, " to wit, William Meade, $48." On the part of the petitioner the obligation of this sentence is denied.

1st. Because it is a court sitting under the authority of the state, and not of the United States.

2d. It has not proceeded according to the laws of the state, nor is it constituted according to these laws.

3d. Because the court proceeded without notice.

1. The court was unquestionably convened by the authority of the state, and sat as a state court. It is, however, contended, that the marshal may collect fines assessed by a state court for the failure of a militia man to take the field in pursuance of orders of the president of the United States. The constitution of the United States gives power to congress to provide for calling forth the militia to execute the laws of the union, &c. In the execution of this power, it is not doubted that congress may provide the means of punishing those who shall fail to obey the requisition made in pursuance of the laws of the union, and may prescribe the mode of proceeding against such delinquents, and the tribunals before which such proceedings should be had. Indeed, it would seem reasonable to expect that all proceedings against delinquents should rest on the authority of that power which had been offended by the delinquency. This idea must be retained while considering the act of congress. The first section of the act of 1795, authorizes the president, "whenever the United States shall be invaded, or in imminent danger of invasion," to call forth such number of the militia of the state or states most convenient to the place of danger or scene of action, as he may judge necessary to repel such invasions, and to issue his orders for that purpose to the officer or officers of the militia as he may think proper."

The 5th section enacts "that every officer, non-commissioned officer, or private, of the militia, who shall fail to obey the orders of the president of the United States in any of the cases before recited, shall forfeit a sum not exceeding one year's pay, and no less than one month's pay, to be determined and adjudged by a court martial."

The 6th section enacts " that courts martial for the trial of militia shall be composed of militia officers only."

Upon these sections depends the question whether courts martial for the assessment of fines against delinquent militiamen should be constituted under the authority of the United States, or of the state to which the delinquent belongs. The idea originally suggested that the tribunal for the trial of the offence should be constituted by, or derive its authority from, the government against which the offence had been .committed, would seem to require, that the court thus referred to in general terms, should be a court sitting under the authority of the United States. It would be reasonable to expect that if the power were to be devolved on the court of a state government, that more explicit terms would be used for conveying it. And it seems also to be a reasonable construction, that the legislature, when in the sixth section providing a court martial for the trial of militia, held in mind the offences described in the preceding sections, and to be submitted to a court martial. If the offences described in the fifth section are to be tried by a court constituted according to the provisions of the sixth section, then we should be led by the language of the section to suppose that congress had in contemplation a court formed of officers in actual service, since the provision that it " should be composed of militia officers only" would be otherwise nugatory. This construction derives some aid from the act of 1814. By that act, courts martial for the trial of offences, such as that with which Mr. Meade is charged, are to be appointed according to the rules prescribed by the articles of war. The court, in the present case, is not appointed according to those rules. The only argument which occurs to me against this reasoning grows out of the inconvenience arising from trying delinquent militiamen who remain at home, by a court martial composed of officers in actual service. This inconvenience may be great, and well deserves the consideration of congress: but in so construing a law as to devolve on courts sitting under the authority of the state, a power, which in its nature, belongs to the United States. If, however, this should be the proper construction, then the court must be constituted according to the law of the state.

On examining the laws of Virginia, it appears that no court martial could be called for the assessment of fines on

Wm. Meade<br>v.<br>The Deputy<br>Marshal of the<br>district of Virginia.

Wm. Meade
v.
The Deputy
Marshal of the
district of Vir-
ginia.

the trial of privates not in actual service. This duty is performed by the courts of inquiry; and a second court must sit to receive the excuses of those against whom a previous court may have assessed fines, before the sentence becomes final, or can be executed. If it be supposed, that the act of congress has conferred the jurisdiction against delinquent militia privates on courts martial constituted as those are for the trial of officers, still this court has proceeded in such manner that its sentence cannot be sustained.

It is a principle of natural justice, with which courts are never at liberty to dispense, unless under the mandate of positive laws, that no person shall be condemned unheard, or without an opportunity of being heard.

There is no law authorizing courts martial to proceed against any person without notice, consequently such proceeding is entitled unlawful. In the case of the courts of inquiry, sitting under the authority of the state, the practice has, I believe, prevailed to proceed in the first place without notice; but this inconvenience is in some degree remedied by a second court; and I am by no means prepared for such a construction of the act as would justify rendering this sentence final without substantial notice; but be this as it may, there is a court martial, not a court of inquiry, and no laws exist, authorizing a court martial to proceed without notice. In this case the court appears so to have proceeded; for this reason, I consider its sentence as entirely nugatory, and do therefore direct the petitioner to be discharged from the custody of the marshal